UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DREW MARTIN,<br><br>                              Plaintiff,<br>     vs.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>                             Defendants. | CASE NO. 11cv91-MMA (RBB)<br><br>**ORDER GRANTING DEFENDANTS' UNOPPOSED MOTIONS FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 38 & 46] |

     Plaintiff Drew Martin filed this civil rights action against Defendants San Diego County, San Diego County Deputy Sheriffs Hardy and Navarro, and Stephanie Buchert, M.D, alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment, and related state law claims. Defendants Buchert, Hardy, and San Diego County move the Court for summary judgment as to all remaining claims.[1] Plaintiff, proceeding *pro se*, received notice of the pending motions pursuant to *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), but has not filed a response. [Doc. Nos. 43 & 46-3.] For the following reasons, the Court **GRANTS** Defendants' motions.

### PLAINTIFF'S CLAIMS

     According to the allegations in Plaintiff's First Amended Complaint [Doc. No. 10], while incarcerated in the Administrative Segregation Unit ("ASU") at Vista Detention Facility in Vista, California, Plaintiff encountered a violent fellow inmate, Joaquin Martinez. Martinez suffered from

---

[1] The Court dismissed Defendant Navarro from this action on January 27, 2012, pursuant to the parties' joint motion. [Doc. Nos. 47 & 48.]

diagnosed mental health problems, and was being treated by staff psychiatrist, Defendant Stephanie Buchert. Martinez allegedly threatened Plaintiff, prompting Plaintiff to submit a grievance form on September 9, 2010 advising Defendant Buchert of Martinez's increasingly aggressive and hostile behavior. Plaintiff claims that Defendant Buchert informed Martinez of the grievance, prompting Martinez to confront Plaintiff directly with the information. Plaintiff complained about the situation to Defendant Deputy Hardy, and requested a transfer away from Martinez. On September 22, 2010, Martinez entered Plaintiff's cell and stabbed Plaintiff three times in the abdominal area and slashed Plaintiff's face.[2] Plaintiff was evacuated to the trauma center at Scripps Memorial Hospital for surgery. Upon discharge, Plaintiff returned to the ASU, where he vomited blood. He ultimately spent a week in the medical unit before being transferred back to the ASU.

Based on these allegations, Plaintiff claims that Defendant Hardy failed to protect him from Martinez, and was deliberately indifferent to his medical needs, in violation of the Eighth Amendment and California state law. Plaintiff further claims that Defendants Hardy and San Diego County are liable for failing to summon immediately necessary medical care, as required by California Government Code section 845.6. Plaintiff also alleges Defendant San Diego County maintained customs, policies, and/or practices that resulted in his constitutional injuries. Plaintiff claims that Defendant Buchert owed him an affirmative duty of care under *Tarasoff v. Regents of the University of California*, 17 Cal. 3d 425 (1976), which she breached when she failed to protect him from Martinez's threats of bodily harm. Finally, Plaintiff alleges a state law negligence claim against both Defendants Hardy and Buchert, and a California Civil Code section 52.1 claim for damages against Defendant Hardy.

### UNDISPUTED MATERIAL FACTS

The following material facts are not reasonably in dispute.[3] In 2008, Joaquin Martinez was convicted of first degree murder, had a history of substance abuse, including methamphetamine and

---

[2] On January 7, 2011, the San Diego County District Attorney filed a felony complaint against Martinez based on his assault on Plaintiff, charging Martinez with attempted murder, assault with a deadly weapon by a prisoner, and possession of a deadly weapon at a penal institution. The disposition of those charges is unknown.

[3] These facts are taken from Defendants' Statements of Undisputed Facts submitted in support of their motions for summary judgment.

heroin, and was receiving treatment from several mental healthcare professionals who noted his need for anti-psychotic medication and his extensive history of highly aggressive behavior. Martinez had murdered a woman, and cut off her hands and feet. He kept pictures of the dismembered body parts in his cell in the ASU at Vista Detention Facility. The ASU is the safest housing unit at Vista Detention Facility, as each prisoner is locked in his cell 23 hours per day. The inmates' cells are inspected weekly for contraband, including razor blades, filed down toothbrushes, and fishing line. Martinez was subject to the most restrictions possible, and was considered to be one of the most dangerous prisoners in the jail.

In an entry dated August 2, 2010, Defendant Buchert noted that Martinez had been self-mutilating his face. She increased his anti-depressant medications and continued his anti-psychotics. On September 9, 2010, Plaintiff filed an inmate grievance stating that Martinez was "becoming more aggressive and hostile towards other inmates, especially me." *See* Buchert MSJ, Ex. "E." The next day, a staff psychiatrist, Matthew Carroll, examined Martinez, diagnosed him with psychotic and depressive disorders, noted his antisocial personality traits, and determined he was competent to stand trial. Dr. Carroll also noted that Martinez had a history of not taking his medications. On September 13, 2012, Defendant Buchert increased Martinez's anti-psychotic medication after Martinez admitted to having thoughts that "someone is trying to steal my soul." *See* Buchert MSJ, Ex. "F."

Plaintiff testified during his deposition that Martinez knew how to manipulate fishing line to unlock his cell door. Plaintiff did not inform Defendant Hardy, or any one else, that Martinez could unlock his cell door. The day Martinez assaulted Plaintiff, Martinez was observed snorting something prior to the incident. Defendant Hardy was off duty and not present when Martinez assaulted Plaintiff; he first learned of the incident the next day. After the assault, medication was found in Martinez's possession, suggesting that he had not been taking his medication as prescribed.

**DISCUSSION**

*1.    Legal Standard*

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute. The fact in contention must be material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and the dispute must be genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 250; *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

Federal Rule of Civil Procedure 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. FED. R. CIV. P. 56(c). At summary judgment, the court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the non-movant is 'to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 248-49.

Here, the motions for summary judgment are unopposed. A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after court determines that there are no material issues of fact). The court may, however, grant

1  an unopposed motion for summary judgment if the movant's papers are themselves sufficient to
2  support the motion and do not on their face reveal a genuine issue of material fact. *Henry v. Gill*
3  *Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

4      2.    *Analysis*

5          a)    <u>Defendant Buchert</u>

6  Plaintiff alleges Defendant Buchert was negligent when she failed to protect Plaintiff from
7  harm by her patient, Martinez. Under California law "[t]he elements of a negligence cause of action
8  are: (1) a legal duty to use due care; (2) a breach of that duty; (3) the breach was the proximate or
9  legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the
10 duty of care." *Brown v. Ransweiler*, 171 Cal.App.4th 516, 534 (2009). Pursuant to the California
11 Supreme Court's holding in *Tarasoff v. Regents of University of California*, 551 P.2d 334, 345
12 (Cal.1976), when a therapist ". . . does in fact determine, or under applicable professional standards
13 reasonably should have determined, that a patient poses a serious danger of violence to others, he
14 bears a duty to exercise reasonable care to protect the foreseeable victim of that danger." In
15 *Thompson v. County of Alameda*, 614 P.2d 728 (Cal.1980), the California Supreme Court made clear
16 that a duty to warn arises only when the potential victim is known and foreseeable.

17 Here, Defendant Buchert submits uncontroverted evidence that Martinez did not identify
18 Plaintiff as a specific target of possible violent harm during her sessions with him. Under such
19 circumstances, a duty to protect Plaintiff as a "foreseeable victim" did not arise. However, even if
20 the Court assumes Defendant Buchert owed Plaintiff such a duty, the record establishes that there
21 was no breach. To the contrary, Defendant Buchert took Plaintiff's grievance seriously and
22 increased Martinez's medication to help calm his mood and control his anger. According to her
23 expert, Defendant Buchert treated Martinez consistently and appropriately based on his history and
24 diagnoses. As such, Plaintiff's negligence claims against Defendant Buchert fail as a matter of law.

25         b)    <u>Defendant Hardy</u>

26 Plaintiff claims that Defendant Hardy was deliberately indifferent to his serious medical
27 needs, and failed to protect him from Martinez. These claims require that there be an actual
28 connection or link between the actions of Defendant Hardy and the deprivation alleged to have been

suffered by Plaintiff. *See Rizzo v. Goode*, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

First, it is undisputed that Defendant Hardy was not on duty, and thus not physically present, the day Martinez assaulted Plaintiff. Nor is there any evidence in the record to suggest Defendant Hardy observed or interacted with Plaintiff upon his return to the ASU after surgery, or at any time during Plaintiff's time in the medical unit. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted). Defendant Hardy had no involvement in the events giving rise to Plaintiff's serious medical needs. Thus, Plaintiff's deliberate indifference claims against Defendant Hardy fail as a matter of law. His claim against Defendant Hardy for failure to provide immediately necessary medical care under California Government Code section 845.6 fails on this basis as well.[4]

Nor do Plaintiff's failure to protect claims against Defendant Hardy survive summary judgment. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks and citations omitted). But the prison official will be liable only if "the official knows of and disregards an excessive risk to inmate health and safety; the officials must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. It is undisputed that Defendant Hardy did not know about Martinez's ability to open his cell door. Even considering the disputed facts in the light most favorable to Plaintiff, i.e. whether Plaintiff complained repeatedly to Defendant Hardy about Martinez and whether Plaintiff

---

[4] California Government Code section 845.6 provides in pertinent part:

a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

asked Defendant Hardy to transfer him away from Martinez, the evidence would establish at most that Defendant Hardy was aware that Martinez had threatened Plaintiff. In the ASU, where inmates are locked down for 23 hours a day, and in Martinez's case, subjected to substantially more restrictions, Defendant Hardy would have not had reason to believe that Martinez posed a substantial, credible physical risk to Plaintiff. *See Berg v. Kincheloe*, 794 F.2d 457, 460-61 (9th Cir. 1986). Accordingly, on the basis of this record, Defendant Hardy is entitled to summary judgment in his favor on Plaintiff's failure to protect claims.

Because Plaintiff's constitutional claims do not survive summary judgment, his California Civil Code section 52.1(b) claim also fails. "Section 52.1(b) provides a cause of action to any person who has been denied rights under the laws of California." *Winarto v. Toshiba America Electronics Components, Inc*., 274 F.3d 1276, 1289, n. 13 (9th Cir. 2001), cert. denied, 537 U.S. 1098 (2003). "Section 52.1 does not provide any substantive protections; instead, it enables individuals to sue for damages as a result of constitutional violations." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9 Cir. 1996), overruled on other grounds by *Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997). With no underlying constitutional violation, Plaintiff cannot pursue damages under section 52.1, and Defendant Hardy is entitled to summary judgment in his favor on this claim as well.

Finally, Plaintiff's negligence claim against Defendant Hardy fails. A public employee is liable for injury to a prisoner "proximately caused by his negligent or wrongful act or omission." Cal. Gov. Code § 844.6(d). "In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003). Here, there is no evidence in the record to support a simple negligence claim against Defendant Hardy. To the extent he owed Plaintiff a duty, no triable issue of fact has been raised as to whether he breached that duty or caused Plaintiff to suffer damages as a result.

        c)     <u>Defendant San Diego County</u>

Plaintiff alleges that Defendant San Diego County maintains several customs, policies,

and/or practices that resulted in his injuries. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (local governments considered "persons" subject to liability under section 1983 when official policy or custom brings about constitutional injury). According to Plaintiff, the County: (1) provided inadequate training and supervision of its jail staff with regard to making inmate housing decisions; (2) provided inadequate care, treatment, and supervision of inmates with mental illness; (3) provided inadequate investigation, response, and prevention of violence among inmates; and (4) improperly housed inmates in the ASU.

While local governments may not be found liable for the actions of their employees on a respondeat superior theory, if a constitutional violation is proven to result from a local government's official policy, practice, or custom, that government or governmental entity may be held liable. *See, e.g., Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). However, in this case, there is no evidence establishing a custom, practice, or policy of constitutional violations by the County, and Plaintiff's allegations tell of an isolated incident, affecting him alone. "Proof of random acts or isolated events are insufficient to establish custom." *Thompson v City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir 1989). Accordingly, the County is entitled to summary judgment in its favor on this claim.

Plaintiff also alleges that the County breached its duty under California Government Code section 845.6 to summon immediately necessary medical care. To establish a violation of Section 845.6, a prisoner must show: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care. "'Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care.'" *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006), citing *Watson v. California*, 21 Cal. App. 4th 836, 843 (1993). The need for "immediate medical care" may "arise more than once in relation to an ongoing serious medical condition." *Jett,* 439 F.3d at 1099.

Here, no triable issue of fact exists as to whether Plaintiff received immediate medical care. The County presents uncontradicted evidence that both deputies and medical personnel responded within minutes after Martinez's attack on Plaintiff. Plaintiff was evacuated via ambulance to a trauma center, where he received surgery for his injuries. Upon his return to custody, Plaintiff

alleges his repeated requests for medical attention were ignored for several hours despite experiencing post-surgical complications, such as vomiting blood.  However, there is no *evidence* in the record to support this claim, and a nonmoving party "cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).  Accordingly, summary judgment is appropriate.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants Stephanie Buchert, William Hardy, and San Diego County's motions for summary judgment.  This order disposes of all remaining claims.  The Clerk of Court is instructed to enter judgment accordingly and terminate the case.

**IT IS SO ORDERED**.

DATED: March 6, 2012

Hon. Michael M. Anello
United States District Judge